Matthew C. Williams, State Bar No. 6271
WILLIAMS LAW, P.L.L.C.
P.O. Box 438
114 E. Spring St.
Cascade, ID 83611
Telephone: (208) 634-9233
Facsimile: (208) 361-7982

Attorney for Plaintiffs,
THE ESTATE OF JAMES LEE DIMAGGIO and
LORA DIMAGGIO ROBINSON

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| THE ESTATE OF JAMES LEE DIMAGGIO, by its personal representative, LORA DIMAGGIO ROBINSON, and LORA DIMAGGIO ROBINSON, an individual,<br><br>Plaintiffs,<br><br>-vs-<br><br>SIX UNKNOWN FBI AGENTS and DOES-1-25, inclusive,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS**<br><br>(1)  *Bivens*; Excessive Force in Violation of Fourth Amendment;<br>(2)  *Bivens*; Fifth Amendment Due Process Violation; and<br>(3)  *Bivens*; First Amendment Right of Association Violation.<br><br>**JURY TRIAL DEMANDED** |

**INTRODUCTION**

1. The ESTATE OF JAMES LEE DIMAGGIO and LORA DIMAGGIO ROBINSON file this complaint, pursuant to the *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), against at least six agents of the Federal Bureau of Investigation ("FBI") and DOES 1-25, inclusive.

2. Plaintiff seeks redress for the wrongful death of JAMES LEE DIMAGGIO at the hands of FBI Officers at the Frank Church-River of No Return Wilderness on August 10, 2013.

3. As a proximate cause of the federal defendants' acts and/or omissions, JAMES LEE DIMAGGIO was wrongfully killed and his rights as guaranteed by the Fourth and Fifth Amendments to the United States Constitution and Idaho law were violated, as were the Estate's rights to redress its grievances in the courts of the United States as guaranteed by the First and Fifth Amendments to the United States Constitution.

**JURISDICTION**

4. This is a civil action brought pursuant *to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (Federal Question).

5. Venue is proper in the District Court of Idaho because the acts or omissions which form the basis of the Plaintiffs' claims occurred within the State of Idaho, at the Frank Church-River of No Return Wilderness.

**PARTIES**

6. Plaintiff herein LORA DIMAGGIO ROBINSON, is, and at all times mentioned herein, a competent adult who appears both individually and as the personal representative to the ESTATE OF JAMES LEE DIMAGGIO. Plaintiff is the surviving sister and sole heir of decedent, JAMES LEE DIMAGGIO, and maintains legal residence at Oak Park, California .

7. Plaintiff, THE ESTATE OF JAMES LEE DIMAGGIO appears by and through its representative LORA DIMAGGIO ROBINSON, and may maintain causes of action and recover damages for the value of decedent's life and decedent's pain and suffering.

8. Plaintiffs are ignorant of the true names and/or capacities of defendants sued herein

as DOES 1 through 25, inclusive, and therefore sue said defendants by such fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained. Plaintiffs believe and allege that each of the DOE defendants is legally responsible and liable for the incident, injuries and damages hereinafter set forth. Each defendant proximately caused injuries and damages because of their intentional acts, negligence, breach of duty, negligent supervision, management or control. Each defendant is liable for his/her personal conduct, vicarious or imputed negligence, fault, or breach of duty, whether severally or jointly, or whether based upon agency, employment, ownership, entrustment, custody, care or control or upon any other act or omission. Plaintiffs will ask leave to amend this complaint subject to further discovery.

9. Defendants, DOES 1-25, during all times relevant to the events described in this complaint, were employed by the United States as Federal Bureau of Investigations officials.

10. Said DOES 1-25 acted both as agents of the United States and are sued in their individual capacities under *Bivens*.

11. In doing the acts alleged herein, Defendants, and each of them acted within the course and scope of their employment.

12. In doing the acts and/or omissions alleged herein, Defendants, and each of them, acted under color of authority and/or under color of law.

13. Due to the acts and/or omissions alleged herein, Defendants, and each of them, acted as the agent, servant, and employee and/or in concert with each of said other Defendants herein.

**FACTS**

14. Based on information and belief, Plaintiffs allege the following facts in support of the causes of action alleged within:

**BACKGROUND**

15. JAMES LEE DIMAGGIO was born January 17, 1973.

16. JAMES LEE DIMAGGIO surrounded himself and spent significant time with his sister LORA DIMAGGIO ROBINSON, his only living immediate relative, and his best friend, Brett Anderson, and his family, including his wife Christine, his then 16 year old daughter Hannah

1  Anderson and his then 8 year old son Ethan Anderson.

2  17.  JAMES LEE DIMAGGIO was a close family friend to the Anderson family,
3  Brett Anderson described him as a best friend and said the children though of him as an uncle
4  figure.

5  18.  Hannah Anderson and JAMES LEE DIMAGGIO went on several day trips
6  together, including trips to Malibu, California and Hollywood, California.

7  19.  On or about June 2013, JAMES LEE DIMAGGIO and Hannah Anderson took a
8  daytrip to Hollywood, California. During their trip, Hannah Anderson posted on the social media
9  site Instagram a photo taken by DiMaggio of Hannah Anderson near the Hollywood Hills, which
10 she uploaded to her Instagram account along with a caption "••••When you got the world in your
11 hands nobody can stop you.•••• H0££¥w00d #bye #hollywood #bye #malibu #hello #river."

12 20.  JAMES LEE DIMAGGIO named Brett Anderson's mother, Berenice Anderson, as
13 beneficiary to his $ 112,000 life insurance policy, and indicated that the money was to go to
14 Hannah Anderson and Ethan Anderson.

15 **THE INCIDENT**

16 21.  Hannah Anderson was last seen getting picked up from cheerleading practice at
17 Sweetwater High School, located in National City, California at approximately 4:00 p.m. on
18 August 3, 2013.

19 22.  Hannah Anderson's and JAMES LEE DIMAGGIO's cell phones were turned off at
20 approximately 4:00 p.m. on August 4, 2013. Phone records show that 13 phone calls were
21 exchanged between Hannah Anderson and JAMES LEE DIMAGGIO before their personal cells
22 phones were turned off.

23 23.  On August 4, 2013 at approximately 8:00 p.m. a 911 call reports a fire occurring at
24 JAMES LEE DIMAGGIO's residence at 2071 Ross Avenue, in Boulevard California.

25 24.  In responding to the fire at 2071 Ross Avenue in Boulevard California, California
26 Department of Forestry officers uncovered the bodies of two deceased individuals, later identified
27 as Christine Anderson and Ethan Anderson.

28 25.  JAMES LEE DIMAGGIO and Hannah Anderson were captured on surveillance

1  video traveling in DiMaggio's 2013 Nissan Versa at the Pine Valley Border Patrol Station
2  traveling westbound on the Interstate 8 at approximately 12:00 a.m. August 4, 2013. An alert
3  JAMES LEE DIMAGGIO is captured sitting in the driver's seat, and an alert Hannah Anderson is
4  captured sitting in the front passenger's seat.

5      26.   On August 5, 2013, San Diego County officials issued a statewide Amber Alert for
6  Hannah Anderson and Ethan Anderson, believed to be traveling with JAMES LEE DIMAGGIO.

7      27.   Multiple sightings of DIMAGGIO and Anderson are reported throughout the
8  search, prompting then San Diego homicide Lt. Glenn Giannantonio to state "for all we know they
9  could be hunkered down in the Cleveland National Forest camping or something, and waiting until
10 this blows over and then they're going to come out."

11     28.   An autopsy of Christine Anderson conducted by the San Diego Medical
12 Examiner on August 6, 2013 lists Christina Anderson's cause of death as blunt force injury
13 to head. The autopsy lists 12 different abrasions/lacerations on forehead, scalp, and ear and
14 a gaping 5.5 inch incision wound across Christina Anderson's anterior neck extending to
15 the mid left neck.

16     29.   An autopsy of Ethan Anderson conducted by the County of San Diego Office
17 of the Medical Examiner on August 6, 2013 lists Ethan Anderson's cause of death as
18 "undetermined (charred remains)".

19     30.   On August 7, 2013, four horseback riders, Mark John, Christa John, Mike
20 Young, and Mary Young, encountered Hannah Anderson and JAMES LEE DIMAGGIO
21 near Morehead Lake in the Frank Church River of No Return Wilderness.

22     31.   In describing her encounter with Hannah Anderson and JAMES LEE
23 DIMAGGIO, Mary Young stated, "if she was sending us signals that she was in trouble, we
24 didn't key in on it,", in a news conference on or about August 11, 2013.

25     32.   On August 8, 2013, Mark John notified law enforcement of their encounter
26 with Hannah Anderson and JAMES LEE DIMAGGIO after becoming aware of the amber
27 alert issued in the search for the two individuals.

28     33.   Law enforcement officials discover JAMES LEE DIMAGGIO's 2013 Nissan

Versa covered in layers of brush on August 9, 2013, near Cascade, Idaho, along the border of the Frank Church River of No Return Wilderness, within on or about ten miles from where Mark John reported encountering JAMES LEE DIMAGGIO and Hannah Anderson to law enforcement the day before.

34. A contingency of approximately 200 law enforcement officers from the FBI, the Valley and Ada County Sheriffs' Offices, Idaho Law Enforcement, U.S. Marshals Service, Border Patrol converged at the Frank Church River of No Return Wilderness in an effort to locate JAMES LEE DIMAGGIO and Hannah Anderson.

35. On the morning of August 10, 2013, U.S. Marshals flying a plane above the Frank Church River of No Return Wilderness area spot a campsite north of Morehead Lake belonging to Hannah Anderson and JAMES LEE DIMAGGIO. Video footage taken by the Marshals appears to depict both Hannah Anderson and JAMES LEE DIMAGGIO waiving pieces of cloth in an effort to get the attention of the plane.

36. On August 10, 2013, various members of the FBI Hostage Rescue Team were dropped several miles away from Morehead Lake where Hannah Anderson and JAMES LEE DIMAGGIO were spotted, and then hiked to the camp site. The FBI did not allow any other agencies to participate in the ground operation.

37. According to Hannah Anderson's interview on "Today" on or about October 10, 2013, DiMaggio unsuccessfully attempted to build a fire to signal for help. Hannah Anderson then suggested DiMaggio fire his gun into the air three times to signal for SOS.

38. JAMES LEE DIMAGGIO fired his gun once into the air in attempting to signal for SOS.

39. Before attempting his second shot into the air in attempting to signal for SOS, FBI agents shot JAMES LEE DIMAGGIO six times, including shots to his head, chest and extremities.

40. Based on: (1) the fact that the Defendant agents excluded other officers from participating in the ground operation; (2) that the Defendant agents were, or in the exercise of reasonable care should have been, aware that JAMES LEE DIMAGGIO was not aware

of their presence and was attempting to get rescued when he fired a shot into the air; and (3) the Defendant agents' failure to take reasonable efforts to apprehend JAMES LEE DIMAGGIO without the use of excessive force prior to the time that he fired the shot into the air, Plaintiffs believe and allege that the Defendant FBI agents were so enraged by the as yet unproven underlying allegations of wrongdoing against JAMES LEE DIMAGGIO, that they were overwhelmed by passion, resulting in their mission being more akin to an execution than a mission to rescue and apprehend, and that the Defendant FBI agents intentionally excluded all other law enforcement officers from the ground "rescue" operations so that they would not be closely monitored and could not be prevented from using excessive force against JAMES LEE DIMAGGIO.

41.    Valley County acting Public Information Officer Andrea Dearden said Hannah Anderson appeared to have no physical injuries when she was recovered by FBI Agents.

42.    JAMES LEE DIMAGGIO died near Morehead Lake on August 10, 2013 as a result of the six gunshot wounds inflicted by FBI Agents.

43.    Upon information and belief, at various dates and times between the time JAMES LEE DIMAGGIO was shot and the present, agents/employees of the FBI and the Department of Justice, conspiring with each other, engaged in numerous acts to keep secret information and evidence probative of the unknown agents' tortious conduct against JAMES LEE DIMAGGIO.

**FIRST CAUSE OF ACTION**
**(Excessive Force in Violation of the Fourth Amendment: *Bivens*)**
**[Estate of JAMES LEE DIMAGGIO against DOES 1-25]**

44.    Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein by this reference as if those paragraphs were set forth in full.

45.    By unlawfully shooting and killing JAMES LEE DIMAGGIO, Defendants used excessive force in violation of the Fourth Amendment to the United States Constitution.

46.    FBI DOES 1-25 knowingly and intentionally denied JAMES LEE DIMAGGIO's constitutional right to freedom from unreasonable seizures in the form of the use of excessive force by shooting him, inflicting six gunshot wounds causing his death.

47. FBI DOES 1-25 violated JAMES LEE DIMAGGIO'S constitutional rights by failing to properly supervise, monitor, and take reasonable efforts to protect the constitutional rights of JAMES LEE DIMAGGIO.

48. The conduct of each FBI DOE Defendant violated clearly established constitutional or other rights of which a reasonable public official should have known.

49. The FBI DOE Defendants' actions, omissions, policies, patterns, practices and customs, as complained of herein, were intentional and reckless and demonstrate a callous disregard for, or deliberate indifference to, JAMES LEE DIMAGGIO'S personal safety, security, freedom and civil and constitutional rights.

50. As a direct and proximate result of the unlawful actions of these Defendant, JAMES LEE DIMAGGIO suffered emotional harm and physical harm leading to his death.

51. The conduct resulted in a deprivation of JAMES LEE DIMAGGIO'S rights alleged above which has legally, proximately, foreseeable and actually caused JAMES LEE DIMAGGIO to suffer emotional distress, pain and suffering, and further general and special damages according to proof at the time of trial.

52. The conduct was done in deliberate or reckless disregard of JAMES LEE DIMAGGIO's Constitutionally protected rights; justifying the award of exemplary damages against defendants in an amount according to proof at the time of trial in order to deter the defendants from engaging in similar conduct and to make an example by way of monetary punishment.

**SECOND CAUSE OF ACTION**
**(Fifth Amendment Due Process Violation; *Bivens*)**
**[THE ESTATE OF JAMES LEE DIMAGGIO against DOES 1-25]**

53. Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein by this reference as if those paragraphs were set forth in full.

54. By unlawfully shooting and killing JAMES LEE DIMAGGIO, Defendants deprived JAMES LEE DIMAGGIO of his constitutional right to freedom from depravation of liberty and life without due process of law in violation of the Fifth Amendment to the United States Constitution.

55. FBI DOES 1-25 knowingly and intentionally denied JAMES LEE DIMAGGIO his constitutional right to freedom from punishment prior to conviction of any crime by shooting him, inflicting six gunshot wounds leading to his death.

56. FBI DOES 1-25 violated JAMES LEE DIMAGGIO'S constitutional rights by failing to properly supervise, monitor, and take reasonable efforts to protect the constitutional rights of JAMES LEE DIMAGGIO.

57. The conduct of each FBI DOE Defendant violated clearly established constitutional or other rights of which a reasonable public official should have known.

58. The FBI DOE Defendants' actions, omissions, policies, patterns, practices and customs, as complained of herein, were intentional and reckless and demonstrate a callous disregard for, or deliberate indifference to, JAMES LEE DIMAGGIO'S personal safety, security, freedom and civil and constitutional rights.

59. As a direct and proximate result of the unlawful actions of these Defendant, JAMES LEE DIMAGGIO suffered emotional harm and physical harm leading to his death.

60. The conduct resulted in a deprivation of JAMES LEE DIMAGGIO's rights alleged above which has legally, proximately, foreseeable and actually caused JAMES LEE DIMAGGIO to suffer emotional distress, pain and suffering, and further general and special damages according to proof at the time of trial.

61. The conduct was done in deliberate or reckless disregard of JAMES LEE DIMAGGIO's Constitutionally protected rights; justifying the award of exemplary damages against defendants in an amount according to proof at the time of trial in order to deter the defendants from engaging in similar conduct and to make an example by way of monetary punishment.

**THIRD CAUSE OF ACTION**
**(First Amendment Right of Association: *Bivens* Action)**
**[By LORA DIMAGGIO ROBINSON against all defendants except the United States]**

62. Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein by this reference as if those paragraphs were set forth in full.

COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS

1  63. Defendants and DOES 1-25, inclusive, deprived JAMES LEE DIMAGGIO of his
2  rights under the United States Constitution to be free from the use of excessive force by law
3  enforcement and punishment without due process.

4  64. By these acts, the defendants violated JAMES LEE DIMAGGIO's constitutional
5  rights to be free from excessive force and punishment without due process of law. The improper
6  and unjustified use of deadly force used was objectively unreasonable and excessive and
7  performed with a deliberate indifference to the safety and welfare of JAMES LEE DIMAGGIO.

8  65. The deprivation of the rights alleged violated the Constitutional rights of
9  JAMES LEE DIMAGGIO's sister, LORA DIMAGGIO ROBINSON to the familial love, society
10 and companionship of her brother, protected by the First and Fifth Amendments.

11 66. FBI DOES 1-25 violated JAMES LEE DIMAGGIO'S constitutional rights by
12 failing to properly supervise, monitor, and take reasonable efforts to protect the constitutional
13 rights of JAMES LEE DIMAGGIO and LORA DIMAGGIO ROBINSON.

14 67. The conduct of each FBI DOE Defendant violated clearly established constitutional
15 or other rights of which a reasonable public official should have known.

16 68. The FBI DOE Defendants' actions, omissions, policies, patterns, practices and
17 customs, as complained of herein, were intentional and reckless and demonstrate a callous
18 disregard for, or deliberate indifference to, JAMES LEE DIMAGGIO'S personal safety, security,
19 freedom and civil and constitutional rights..

20 69. The conduct resulted in a deprivation of Plaintiffs' rights alleged above which has
21 legally, proximately, foreseeable and actually caused LORA DIMAGGIO ROBINSON and
22 JAMES LEE DIMAGGIO to suffer loss of familial love, society and companionship and further
23 general and special damages according to proof at the time of trial.

24 70. The conduct was done in deliberate or reckless disregard of JAMES LEE
25 DIMAGGIO'S and LORA DIMAGGIO ROBINSON'S Constitutionally protected right to familiar
26 association, justifying the award of exemplary damages against defendants in an amount according
27 to proof at the time of trial in order to deter the defendants from engaging in similar conduct and to
28 make an example by way of monetary punishment.

**JURY DEMAND**

Plaintiffs hereby demand a jury trial on all issues so triable.

**PRAYER**

WHEREFORE, plaintiff prays for relief, as follows:

1. For general damages in a sum $10,000,000;

2. For special damages, including but not limited to, past, present and/or future wage loss, income and support, medical expenses and other special damages in a sum to be determined according to proof;

4. For funeral and burial expenses according to proof;

5. For punitive damages and exemplary damages in the sum of $10,000,000;

6. For costs of suit and interest incurred herein; and

7. Award Plaintiffs any other relief deemed necessary and proper.

Dated: August 7, 2015                                    **WILLIAMS LAW, P.L.L.C.**

By     /s/Matthew C. Williams
Matthew C. Williams, State Bar No. 6271
P.O. Box 438
114 E. Spring St.
Cascade, ID 83611
Telephone: (208) 634-9233
Attorney for Plaintiffs
THE ESTATE OF JAMES LEE DIMAGGIO
and LORA DIMAGGIO ROBINSON

COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS