UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

THE ESTATE OF JAMES LEE
DIMAGGIO, by its personal
representative, LORA DIMAGGIO
ROBINSON, and LORA DIMAGGIO
ROBINSON, an individual,

        Plaintiffs,

  v.

UNITED STATES, SIX UNKNOWN
FBI AGENTS, and DOES 1 – 25,
inclusive,

        Defendants.

Case No. 1:15-CV-00311-EJL

**MEMORANDUM DECISION AND ORDER**

### INTRODUCTION

Before the Court in the above entitled matter is the Defendants' Motion to Dismiss. (Dkt. 17.) The parties have filed responsive briefing and the Motion is ripe for the Court's consideration. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the Motion shall be decided on the record before this Court without oral argument.

MEMORANDUM DECISION AND ORDER - 1

## FACTUAL AND PROCEDURAL BACKGROUND

The circumstances giving rise to this case began on August 3, 2013 when Hannah Anderson, a sixteen year old girl, went missing in San Diego County, California.[1] The following day, Hannah was spotted on a surveillance video riding in a car with James Lee DiMaggio, a friend of the Anderson family with whom Hannah was familiar. (Dkt. 10 at ¶ 28.) Later that same day, local police responded to a fire at Mr. DiMaggio's home where the bodies of two individuals were discovered. (Dkt. 10 at ¶ 27.)

On August 5, 2013, the San Diego Sheriff's office obtained a warrant to search Mr. DiMaggio's residence.[2] An Amber Alert for Hannah and her younger brother was issued in California. (Dkt. 10 at ¶ 29.) On August 6, 2013, autopsy results revealed that the bodies found at the home were those of Hannah's mother and younger brother. (Dkt. 10 at 27.)

---

[1] The parties here dispute certain facts of the underlying events and the implications drawn from those facts. On this Motion, where the facts are disputed, the Court has construed the allegations in the Complaint as true and made inferences in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[2] In support of their Motion to Dismiss, Defendants point to the search and arrest warrants and supporting affidavits thereto issued in relation to their investigation and search efforts. (Dkt. 17.) Plaintiffs oppose consideration of materials outside of the pleadings on this Motion. (Dkt. 23.) Generally, courts may not consider evidence outside of the pleadings on a Rule 12(b)(6) motion. Fed. R. Civ. P. 12(d). The Court may, however, take judicial notice "of the records of state agencies and other undisputed matters of public record" without transforming the motions to dismiss into motions for summary judgment. *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 (9th Cir. 2004); *United States v. Ritchie*, 342 F.3d 903, 907–908 (9th Cir. 2003). Here, the Court finds it appropriate to take judicial notice of the fact that the search and arrest warrants were requested and obtained by law enforcement, but not that the warrants establish as true any of their contents, allegations, or inferences that may be drawn therefrom. *Ritchie*, 342 F.3d at 909.

An arrest warrant for Mr. DiMaggio was issued that same day. The search for Hannah was expanded and the Amber Alert was extended outside of California. (Dkt. 10 at 35.)

On August 8, 2013, a group of horseback riders notified law enforcement that on the preceding day they had encountered Mr. DiMaggio and Hannah near Morehead Lake in the Frank Church River of No Return Wilderness located near Cascade, Idaho. (Dkt. 10 at ¶ 33.) Several state and federal law enforcement agencies dispatched officers and agents to that area to begin a search. On August 9, 2013, Mr. DiMaggio's car was found near Cascade, Idaho under layers of brush. (Dkt. 10 at ¶ 36.) On August 10, 2013, a United States Marshals Service plane flew over a campsite north of Morehead Lake where they spotted the pair. (Dkt. 10 at ¶ 38.) The parties dispute whether just Hannah or both she and Mr. DiMaggio were waving in the air in an attempt to get the attention of the plane. (Dkt. 10 at ¶ 38) (Dkt. 17 at 4.)

Members of the FBI Hostage Rescue Team then hiked several miles to the campsite. The parties dispute the specifics of the facts that occurred as the FBI agents approached the campsite. The Complaint alleges Hannah suggested to Mr. DiMaggio that he fire his gun into the air three times to signal for SOS. (Dkt. 10 at ¶ 40.) The Complaint goes on to allege that Mr. DiMaggio then fired his gun once in the air in an attempt to signal for SOS but, before attempting his second shot into the air, the FBI agents shot Mr. DiMaggio six times in his head, chest, and extremities. (Dkt. 10 at ¶¶ 41-42.) Defendants contend that Hannah's subsequent interview contradicts those allegations when she stated that after Mr. DiMaggio fired the first shot, he lowered his gun and fired a second time. (Dkt. 17 at 5.) Mr. DiMaggio died from the gunshot wounds.

MEMORANDUM DECISION AND ORDER - 3

Plaintiffs, the Estate of James Lee DiMaggio and Lora DiMaggio Robinson, have brought this action alleging numerous claims including three *Bivens* claims (Counts 1-3) against the Defendants "Six Unknown FBI Agents" and six claims under the Federal Tort Claims Act (Counts 4-9), ("FTCA"), 28 U.S.C. §§ 1346(b); 2671-2680, against Defendant the United States of America. (Dkt. 1, 10.) In general, the claims are for excessive force; violations of the First and Fifth Amendments; wrongful death; intentional and negligent infliction of emotional distress; negligence; assault; and battery. (Dkt. 10.) The United States filed this Motion to Dismiss the FTCA claims (Counts 4-9) pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. 17.)

## STANDARD OF LAW

A motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a party's claim for relief. When considering such a motion, the Court's inquiry is whether the allegations in a pleading are sufficient under applicable pleading standards. Federal Rule of Civil Procedure 8(a) sets forth minimum pleading rules, requiring only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In general, a motion to dismiss will only be granted if the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has

MEMORANDUM DECISION AND ORDER - 4

acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). Although "we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Therefore, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Caviness v. Horizon Comm. Learning Cent., Inc.*, 590 F.3d 806, 811-12 (9th Cir. 2010) (citation omitted).

## DISCUSSION

### 1. Personal Representative

Ms. Robinson is Mr. DiMaggio's sister and sole heir of his estate. (Dkt. 10 at ¶ 7.) Defendants argue Ms. Robinson, a non-resident of Idaho, cannot bring suit in Idaho as a personal representative of Mr. DiMaggio's estate without satisfying certain conditions. (Dkt. 17.) Plaintiffs maintain Ms. Robinson has the proper capacity to bring this action and should be granted leave to amend in order to cure any procedural filing requirements to act as a foreign administrator. (Dkt. 23.) Defendants do not oppose allowing Plaintiff to amend the Complaint if their other dispositive arguments are denied. (Dkt. 26.) In light of the Court's rulings herein, leave to amend and/or cure this defect is granted.

### 2. Common-Law Claims

Defendants argue the common-law claims abate upon Mr. DiMaggio's death. (Dkt. 17.) Plaintiffs concede that the survivor actions raised in Counts Five through Nine abated with Mr. DiMaggio's death. (Dkt. 23 at 1, n. 1.) Those claims are therefore dismissed. The only remaining claim at issue on this Motion is the wrongful death claim.

MEMORANDUM DECISION AND ORDER - 5

### 3. Wrongful Death Claim

Plaintiffs' wrongful death claim is brought against the United States pursuant to the FTCA. (Dkt. 10.)[3] Liability under the FTCA is determined by the law of the state where the claim arose - in this case Idaho tort law. *See United States v. Olson*, 546 U.S. 43, 45–46 (2005) (holding that the United States' liability under the FTCA is to be based on the state law liability of a private party); 28 U.S.C. § 1346(b)(1) ("under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."). Defendants argue the Plaintiffs have failed to allege a plausible wrongful death claim under Idaho law because 1) Plaintiffs have not established they have standing to bring the claim and 2) the allegations fail to sufficiently show that Mr. DiMaggio's death was caused by a wrongful act. (Dkt. 17.)

#### A. Standing

When the death of a person is caused by the wrongful act or neglect of another, the decedent's heirs or personal representative may maintain an action for damages against the person causing the death. *See* Idaho Code § 5-311(1); *Turpen v. Granieri*, 985 P.2d 669, 672 (Idaho 1999). Standing to bring such a claim is dependent on whether the claimants qualify as an "heir" under Idaho Code § 5-311(2). *O'Guin v. Bingham Cnty.*, 72 P.3d 849, 856 (Idaho 2003). Idaho Code § 5-311(2) defines "heirs" to mean:

---

[3] The FTCA provides a limited waiver of the United States' sovereign immunity so as to allow civil claims against the federal government arising from the negligent or wrongful acts or omissions of federal employees "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674; *Foster v. United States*, 522 F.3d 1071, 1074 (9th Cir. 2008).

MEMORANDUM DECISION AND ORDER - 6

> (a) Those persons who would be entitled to succeed to the property of the decedent according to the provisions of subsection (22) of section 15-1-201, Idaho Code.
>
> (b) Whether or not qualified under subsection (2)(a) of this section, the decedent's spouse, children, stepchildren, parents, and, when partly or wholly dependent on the decedent for support or services, any blood relatives and adoptive brothers and sisters. It includes the illegitimate child of a mother, but not the illegitimate child of the father unless the father has recognized a responsibility for the child's support.
>
> ….

Plaintiffs argue the Estate, on behalf of the heirs, as well as Ms. Robinson, as an heir, have standing to bring this wrongful death action in Idaho under both subsections (a) and (b). (Dkt. 23.) Defendants contend the Plaintiffs do not fall within either of the subsections. (Dkt. 17, 26.)

Subsection (a) applies to those individuals who meet the statutory definition of an "heir" under Idaho's intestate succession statute, Idaho Code § 15-1-201(22), which defines "heirs" to mean "those persons, including the surviving spouse, who are entitled under the statutes of intestate succession to the property of a decedent." Plaintiffs assert that Ms. Robinson, as Mr. DiMaggio's sibling, is his sole surviving heir entitled to succession of his property and, therefore, the proper party to bring the wrongful death action. (Dkt. 23.) Defendants disagree arguing the Idaho Uniform Probate Code, which contains Idaho's intestacy provision cited in the wrongful death statute, does not apply here because Mr. DiMaggio was a non-resident decedent with no property located in Idaho. (Dkt. 26.)

MEMORANDUM DECISION AND ORDER - 7

The Court finds the Plaintiffs are not "heirs" qualified to bring a wrongful death action under subsection (a). Intestate succession in Idaho is governed by Idaho's Uniform Probate Code which applies only to, as applicable here, "the property of nonresidents located in this state…." Idaho Code § 15-1-301. There is no allegation that Mr. DiMaggio, a non-resident decedent, has any property in the state of Idaho.[4] Therefore, Idaho's intestate succession does not apply making subsection (a) inapplicable to both Plaintiffs because neither are "entitled under the statutes of intestate succession to the property of a decedent." Idaho Code § 5-311(2)(a).

Under Subsection (b), Ms. Robinson could, as Mr. DiMaggio's sister, fall within the definition of an "heir," provided she was "partly or wholly dependent on the decedent for support or services." *O'Guin*, 72 P.3d at 856 (quoting Idaho Code § 5-311(2)(b)). "Dependency is a prerequisite to suit, and loss of support has been viewed as a measure of damages." *Id.* (citing *Pfau v. Comair Holdings, Inc.*, 15 P.3d 1160, 1163-64 (Idaho 2000)). The "support" envisioned by the statute is financial benefits, including contributions in kind as well as money. *See* Idaho Code § 5-311(2)(b)(1). It does not, however, extend to emotional or social support. *O'Guin*, 72 P.3d at 856.

There are no allegations or any showing that Ms. Robinson was financially dependent on Mr. DiMaggio. (Dkt. 10, 23.) At most, Count Four of the Complaint seeks damages including "financial support." (Dkt. 10 at ¶ 79.) The Court finds this conclusory

---

[4] Mr. DiMaggio also does not meet the other territorial applications of Idaho Code § 15-1-301(1), (3)-(5).

MEMORANDUM DECISION AND ORDER - 8

allegation fails to show that Ms. Robinson satisfies the definition of an heir under subsection (b).

Because Plaintiffs do not meet either subsection of Idaho Code § 5-311(2)'s definition of an "heir," they cannot bring the wrongful death claim. The Motion to Dismiss is, therefore, granted on this claim. As discussed later in this Order, however, the Court will grant Plaintiffs leave to amend as to this claim.

### B. Wrongful Act

Defendants next assert that the claim should be dismissed because the Complaint fails to sufficiently alleged Mr. DiMaggio's death was caused by a wrongful act. (Dkt. 17, 26.) Plaintiffs counter arguing the facts are sufficient to show a wrongful act caused Mr. DiMaggio's death such that a jury should decide this issue. (Dkt. 23.) Plaintiffs also challenge the Defendants' reliance on facts outside of the pleadings to support their Motion. Defendants maintain dismissal is proper because the facts alleged fail to state a claim. (Dkt. 26.)

"The two elements that must be proven in a wrongful death suit [in Idaho] are: (1) that an actionable wrong was committed by the defendant against the decedent, and (2) that the same actionable wrong caused the decedent's death." *Castorena v. General Elec.*, 238 P.3d 209, 219 (Idaho 2010); *see also* Idaho Code § 5-311(1). "[T]hose bringing an action for wrongful death are subject to the same defenses that could have been offered had the decedent himself filed suit, such as contributory or comparative negligence." *Id.* at 217.

MEMORANDUM DECISION AND ORDER - 9

One defense available in Idaho to those who use deadly force in self-defense or in defense of others is civil immunity. Idaho Code § 6-808. The standard is whether the person using deadly force had "reasonable cause to believe, and does believe, he is in danger of great bodily injury or where the person being defended is in similar danger." *State v. Rodriguez*, 460 P.2d 711, 715-16 (Idaho 1969). The test is an objective one asking whether the user of deadly force "acted as a reasonable and prudent person under the same or similar circumstances." *State v. Varie*, 26 P.3d 31, 37 (Idaho 2001).

Additionally, Courts often look to Fourth Amendment excessive force cases to determine whether the use of deadly force was reasonable in a wrongful death case. *See Young v. County of Los Angeles*, 655 F.1156, 1170 (9th Cir. 2001) (applying the Fourth Amendment to California law). Claims of excessive force in the context of an arrest or investigatory stop implicates the Fourth Amendment right to be free from "unreasonable ... seizures." U.S. CONST. AMEND. IV; *see Graham v. Connor*, 490 U.S. 386, 394 (1989). Under the Fourth Amendment, police may use only such force as is objectively reasonable under the circumstances. *Graham*, 490 U.S. at 397. Courts analyze claims of excessive force under an "objective reasonableness" standard by asking whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting the officer, without regard to underlying intent or motivation and without the "20/20 vision of hindsight." *Id.* at 396, 398; *Bryan v. MacPherson*, 630 F.3d 805, 817 (9th Cir. 2010). All determinations of unreasonable force "must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense,

MEMORANDUM DECISION AND ORDER - 10

uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97.

An officer's use of deadly force is reasonable only if "the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Tennessee v. Garner*, 471 U.S. 1, 3 (1985); *see also Graham*, 490 U.S. at 396 (one of factors in determining reasonableness is "whether the suspect poses an immediate threat to the safety of the officers or others"); *Blanford v. Sacramento Cty.*, 406 F.3d 1110, 1115 (9th Cir. 2005).

"[T]he reasonableness of force used is ordinarily a question of fact for the jury." *Liston v. Cty. of Riverside*, 120 F.3d 965, 976 n.10 (9th Cir. 1997). "Because the excessive force inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, [the Ninth Circuit has] held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Avina v. United States*, 681 F.3d 1127, 1130 (9th Cir. 2012) (internal quotations and citations omitted). However, if the court concludes, "after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances," defendants can prevail on a motion to dismiss or motion for summary judgment. *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994).

The Complaint alleges the following facts: Hannah was last seen getting picked up from school on August 3, 2013; the following day, agencies responded to a fire at Mr. DiMaggio's residence where two bodies were discovered; the bodies were later determined to be those of Hannah's mother and brother; the cause of death of Hannah's mother was

MEMORANDUM DECISION AND ORDER - 11

blunt force injury to the head; Hannah and Mr. DiMaggio were spotted on a video surveillance camera; an Amber Alert for Hannah was issued; Mr. DiMaggio and Hannah were reported as having been seen in a remote area of Idaho; law enforcement agencies responded to the location in Idaho; on August 9, 2013, law enforcement discovered Mr. DiMaggio's car covered in layers of brush near the area in Idaho where he and Hannah had been reported as having been seen; on August 10, 2013, law enforcement officers in an airplane spotted Hannah's and Mr. DiMaggio's campsite; Hannah and/or Mr. DiMaggio attempted to signal the plane; on the same day, members of the FBI Hostage Rescue Team hiked to the campsite; Mr. DiMaggio fired his gun once in the air and, before attempting to fire again, he was shot six times by the FBI Hostage Rescue Team; Mr. DiMaggio died as a result of having been shot. (Dkt. 10.)[5]

The Court finds the Complaint states a plausible claim for wrongful death. Taking the allegations in the Complaint as true, the Court finds there are plausible facts alleged which may establish that the officers' use of deadly force was unreasonable and/or

---

[5] Plaintiffs challenge the Defendants' reliance on materials outside of the pleadings to support their argument that the FBI Agents' actions were not wrongful. Defendants assert the Motion can be decided based on the Complaint's allegations alone and, regardless, maintain the materials are proper to consider because Plaintiffs' cite to them in their Complaint. (Dkt. 26 at 6, n. 6) (Dkt. 10 at ¶¶ 38, 40.) Additionally, Defendants argue the Court should take judicial notice of the search warrants and affidavits to show law enforcement had reason to believe Mr. DiMaggio posed a dangerous threat, was suspected of violent crimes, and that there was probable cause to arrest him. (Dkt. 26 at 7, n. 7.) While the Court acknowledges it could consider the materials cited and relied upon in the Complaint that are outside of the pleadings themselves, the Court has not done so in this case, with the exception of the materials it has taken limited judicial notice of, because the parties heavily dispute the facts in the extrinsic materials and those facts are important to the outcome of the claims in this case. *See* Fed. R. Civ. P. 12(d); *Ritchie*, 342 F.3d at 907–908; *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

MEMORANDUM DECISION AND ORDER - 12

wrongful. It is compelling that the officers suspected Mr. DiMaggio of committing multiple serious crimes in the days immediately prior to their contact as well as the fact that they were responding to an active hostage situation in a remote area where the suspect had fired his weapon endangering the hostage as well as the officers. (Dkt. 26.) The Complaint's allegations, however, that Mr. DiMaggio was not aware of the officers' presence and/or fired his weapon to signal for help states a plausible claim that the use of deadly force may have been unreasonable. Had Mr. DiMaggio not been aware of the officers' approaching and/or fired his weapon into the air in an effort to be rescued, it is plausible that the officers' use of deadly force in response to those actions was unreasonable. It is not entirely known at this time, and/or is disputed, exactly what occurred as the officers approached the campsite and at the time of the shooting. For these reasons, the Court finds that the allegations in the Complaint state a plausible claim for wrongful death. As such, the Motion to Dismiss the wrongful death claim in this regard is denied.

### 4. Leave to Amend

Plaintiffs seek leave to amend in the event the Court grants the state Defendants' Motion to Dismiss. (Dkt. 23.) Defendants contend such leave would be futile. (Dkt. 26.)

Leave to amend pleadings "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Courts apply Rule 15 with "extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citations omitted). In determining whether a motion to amend should be granted, the court generally considers five factors: (1) undue delay; (2) bad faith; (3) futility of amendment; (4) prejudice to the opposing party; and (5) whether the plaintiff has previously amended the complaint. *United States v.*

MEMORANDUM DECISION AND ORDER - 13

*Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011) (citation omitted). These factors are not weighted equally: "futility of amendment alone can justify the denial of a motion" to amend. *Ahlmeyer v. Nev. Sys. of Higher Educ.*, 555 F .3d 1051, 1055 (9th Cir. 2009).

Leave to amend would be futile in this case as to the common law claims which Plaintiffs have conceded should be dismissed. The request for leave to amend is, therefore, denied as to the common law claims. As to the wrongful death claim, the Court finds leave to amend should be granted. While Plaintiffs have not sufficiently alleged facts showing they have standing, the Court cannot say at this time that it is impossible for them to do so. Likewise, the Court grants Plaintiffs leave to amend to cure any procedural filing requirements needed in order for Ms. Robinson to act as a foreign administrator. For these reasons, the Court grants Plaintiffs leave to amend as to the procedural defect and the wrongful death claim. Plaintiffs are directed to file their amended complaint no later than April 28, 2017.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that the Motion to Dismiss (Dkt. 17) is **GRANTED**. Plaintiffs request for leave to amend as to the common law claims (Counts 5-9) is **DENIED** and those claims are **DISMISSED WITH PREJUDICE**. As to

MEMORANDUM DECISION AND ORDER - 14

the wrongful death claim (Count 4) and the procedural filing requirement, the request to amend is **GRANTED**. Plaintiffs shall file their amended complaint as stated herein on or before **April 28, 2017**.

DATED: March 31, 2017

Edward J. Lodge
United States District Judge

MEMORANDUM DECISION AND ORDER - 15