UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THE ESTATE OF JAMES LEE DIMAGGIO, by its personal representative, LORA DIMAGGIO ROBINSON, and LORA DIMAGGIO ROBINSON, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES, SIX UNKNOWN FBI AGENTS, and DOES 1 – 25, inclusive,<br><br>Defendants. | Case No. 1:15-CV-00311-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court in the above entitled matter is the Defendants' Second Motion to Dismiss. (Dkt. 31.) The parties have filed responsive briefing and the Motion is ripe for the Court's consideration. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the Motion shall be decided on the record before this Court without oral argument.

# FACTUAL AND PROCEDURAL BACKGROUND

The circumstances giving rise to this case began on August 3, 2013 when Hannah Anderson, a sixteen year old girl, was found missing in San Diego County, California.[1] The following day, Hannah was spotted on a surveillance video riding in a car with James Lee DiMaggio, a friend of the Anderson family with whom Hannah was familiar. (Dkt. 28 at ¶ 28.) Later that same day, local police responded to a fire at Mr. DiMaggio's home where the bodies of two individuals were discovered. (Dkt. 28 at ¶ 27.)

On August 5, 2013, the San Diego Sheriff's office obtained a warrant to search Mr. DiMaggio's residence.[2] An Amber Alert for Hannah and her younger brother was issued in California. (Dkt. 28 at ¶ 29.) On August 6, 2013, autopsy results revealed that the bodies found at the home were those of Hannah's mother and younger brother. (Dkt. 28 at 27.)

---

[1] The parties here dispute certain facts of the underlying events and the implications drawn from those facts. On this Motion, where the facts are disputed, the Court has construed the allegations in the Complaint as true and made inferences in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[2] In support of their Motion to Dismiss, Defendants point to San Diego County probate records, the search and arrest warrants and supporting affidavits thereto issued in relation to their investigation and search efforts, and a CNN transcript of Ms. Robinson's interview with Piers Morgan. (Dkt. 31.) Generally, courts may not consider evidence outside of the pleadings on a Rule 12(b)(6) motion. Fed. R. Civ. P. 12(d). The Court may, however, take judicial notice "of the records of state agencies and other undisputed matters of public record" without transforming the motions to dismiss into motions for summary judgment. *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 (9th Cir. 2004); *United States v. Ritchie*, 342 F.3d 903, 907–908 (9th Cir. 2003). The Court finds it is appropriate to take judicial notice of the probate and other court records attached to Defendants' Motion to Dismiss. (Dkt. 31, Ex. B-D.) Likewise, the Court finds it appropriate to take judicial notice of the fact that the search and arrest warrants were requested and obtained by law enforcement, but not that the warrants establish as true any of their contents, allegations, or inferences that may be drawn therefrom. *Ritchie*, 342 F.3d at 909. Plaintiffs oppose consideration of the CNN transcript as inadmissible hearsay. (Dkt. 32.) The Court does not find it is necessary to make a determination on the admissibility of the CNN interview transcript because it did not consider it in reaching its decision.

An arrest warrant for Mr. DiMaggio was issued that same day. The search for Hannah was expanded and the Amber Alert was extended outside of California. (Dkt. 28 at ¶¶ 28, 30.)

On August 8, 2013, a group of horseback riders notified law enforcement that on the preceding day they had encountered Mr. DiMaggio and Hannah near Morehead Lake in the Frank Church River of No Return Wilderness located near Cascade, Idaho. (Dkt. 28 at ¶ 33.) Several state and federal law enforcement agencies dispatched officers and agents to that area to begin a search. (Dkt. 28 at ¶ 37.) On August 10, 2013, a United States Marshals Service plane flew over a campsite north of Morehead Lake where they spotted the pair. (Dkt. 28 at ¶ 38.) The parties dispute whether just Hannah or both she and Mr. DiMaggio were waving in the air in an attempt to get the attention of the plane. (Dkt. 28 at ¶ 40.)

Members of the FBI Hostage Rescue Team then hiked several miles to the campsite. The parties dispute the specifics of what occurred as the FBI agents approached the campsite. The Complaint alleges Hannah suggested to Mr. DiMaggio that he fire his gun into the air three times to signal for SOS. (Dkt. 28 at ¶ 40.) The Complaint goes on to allege that Mr. DiMaggio then fired his gun once in the air in an attempt to signal for SOS but, before attempting his second shot into the air, the FBI agents shot Mr. DiMaggio six times in his head, chest, and extremities. (Dkt. 28 at ¶¶ 41-42.) Defendants contend that Hannah's subsequent interview contradicts those allegations when she stated that after Mr. DiMaggio fired the first shot, he lowered his gun and fired a second time. (Dkt. 17 at 5.) Mr. DiMaggio died from the gunshot wounds.

MEMORANDUM DECISION AND ORDER - 3

Plaintiffs, the Estate of James Lee DiMaggio and Lora DiMaggio Robinson, brought this action alleging numerous claims including three *Bivens* claims (Counts 1-3) against the Defendants "Six Unknown FBI Agents" and six claims under the Federal Tort Claims Act (Counts 4-9), ("FTCA"), 28 U.S.C. §§ 1346(b); 2671-2680, against Defendant the United States of America. (Dkt. 1, 10.) In general, the claims are for excessive force; violations of the First and Fifth Amendments; wrongful death; intentional and negligent infliction of emotional distress; negligence; assault; and battery. (Dkt. 10.) The United States filed a Motion to Dismiss the FTCA claims (Counts 4-9) pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. 17.)

This Court issued a Memorandum and Decision on March 31, 2017, dismissing, with Plaintiffs' concession, Counts 5 through 9. The Court granted Plaintiffs leave to amend its complaint in order to cure any procedural filing requirements in order to act as a foreign administrator. (Dkt. 27.)

On the remaining claim, Count Four, Plaintiffs' wrongful death claim, Defendants argued the Plaintiffs had failed to allege a plausible wrongful death claim under Idaho law because the allegations failed to sufficiently show that Mr. DiMaggio's death was caused by a wrongful act. (Dkt. 17, 27.) This Court found that the allegations in the Complaint stated a plausible claim for wrongful death and denied the Motion as to Count Four in this regard.

Additionally, Defendants argued Plaintiffs' wrongful death claim should be dismissed because they did not have standing to bring the claim. This Court found while Ms. Robinson had not made any allegations or showing she was financially dependent on

MEMORANDUM DECISION AND ORDER - 4

Mr. DiMaggio it was possible she "could, as Mr. DiMaggio's sister, fall within the definition of an 'heir,' provided she was 'partly or wholly dependent on the decedent for support or services'" under Idaho Code § 5-311(2)(b). (Dkt. 27.) As such, the Court granted Defendants' Motion to Dismiss to this extent with leave to amend. (Dkt. 27.)

On April 28, 2017, Plaintiffs filed its Second Amended Complaint. In response, Defendants filed another Motion to Dismiss, or in the alternative a Motion for Summary Judgment, arguing that Plaintiffs again failed to plausibly state facts that would allow Ms. Robinson to pursue the wrongful death claim under Idaho law. (Dkt. 31-1.)

## STANDARD OF LAW

A motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a party's claim for relief. When considering such a motion, the Court's inquiry is whether the allegations in a pleading are sufficient under applicable pleading standards. Federal Rule of Civil Procedure 8(a) sets forth minimum pleading rules, requiring only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In general, a motion to dismiss will only be granted if the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

MEMORANDUM DECISION AND ORDER - 5

Although "we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Therefore, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Caviness v. Horizon Comm. Learning Cent., Inc.*, 590 F.3d 806, 811-12 (9th Cir. 2010) (citation omitted).

## DISCUSSION

### 1. Procedural Filing Requirements

State law governs whether an individual suing in a representative capacity may bring suit in federal court. Fed. R. Civ. P. 17(b)(3). Idaho requires that a representative "comply with certain conditions, such as filing a bond or recording a copy of the party's letters of administration with a local official." Capacity to Sue or be Sued—Representatives and Fiduciaries, 6A Charles Alan Wright, et al, *Fed. Prac. & Proc. Civ.* § 1565 (3d ed. 2015); *see also* Idaho Code § 15-4-205. Idaho requires the representative of a non-resident decedent to file "authenticated copies of his appointment and of any official bond he has given." Idaho Code § 15-4-204.

This Court granted Plaintiffs unopposed leave to amend their Complaint in order to cure the procedural filing defects. (Dkt. 27.) This Court finds Plaintiffs have cured those defects and filed the appropriate documentation to show that Ms. Robinson has the capacity to bring this action. Plaintiffs filed certified copies of (1) the Minute Order issued by the Superior Court of the State of California appointing Ms. Robinson as Administrator of Mr. DiMaggio's estate (Dkt. 28-2) and (2) the Letter of Administration, effective through April

14, 2018, appointing Ms. Robinson as the administrator of Mr. DiMaggio's estate (Dkt. 28-3.) (Dkt. 32.)

### 2. Plaintiffs' Standing for Wrongful Death Claim

Plaintiffs' wrongful death claim is brought against the United States pursuant to the FTCA. (Dkt. 10.)[3] Liability under the FTCA is determined by the law of the state where the claim arose - in this case Idaho tort law. *See United States v. Olson*, 546 U.S. 43, 45–46 (2005) (holding that the United States' liability under the FTCA is to be based on the state law liability of a private party); 28 U.S.C. § 1346(b)(1) ("under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."). Defendants argue the Plaintiffs have failed to allege a plausible wrongful death claim under Idaho law because Plaintiffs have again not established they have standing to bring the claim. (Dkt. 31.)

When the death of a person is caused by the wrongful act or neglect of another, the decedent's heirs or personal representative may maintain an action for damages against the person causing the death. *See* Idaho Code § 5-311(1); *Turpen v. Granieri*, 985 P.2d 669, 672 (Idaho 1999). Standing to bring such a claim is dependent on whether the claimants

---

[3] The FTCA provides a limited waiver of the United States' sovereign immunity so as to allow civil claims against the federal government arising from the negligent or wrongful acts or omissions of federal employees "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674; *Foster v. United States*, 522 F.3d 1071, 1074 (9th Cir. 2008).

qualify as an "heir" under Idaho Code § 5-311(2). *O'Guin v. Bingham Cnty.*, 72 P.3d 849, 856 (Idaho 2003). Idaho Code § 5-311(2) defines "heirs" to mean:

> …
> (b) Whether or not qualified under subsection (2)(a) of this section, the decedent's spouse, children, stepchildren, parents, and, when partly or wholly dependent on the decedent for support or services, any blood relatives and adoptive brothers and sisters. It includes the illegitimate child of a mother, but not the illegitimate child of the father unless the father has recognized a responsibility for the child's support[4].
> ….

"Dependency is a prerequisite to suit, and loss of support has been viewed as a measure of damages." *Id.* (citing *Pfau v. Comair Holdings, Inc.*, 15 P.3d 1160, 1163-64 (Idaho 2000)). The "support" envisioned by the statute is financial benefits, including contributions in kind as well as money. *See* Idaho Code § 5-311(2)(b)(1). It does not, however, extend to emotional or social support. *O'Guin*, 72 P.3d at 856.

In its March 31, 2017 Order, this Court held that Ms. Robinson could, as Mr. DiMaggio's sister, fall within § 5-311(2)(b)'s definition of an "heir," provided she was "partly or wholly dependent on the decedent for support or services." *O'Guin*, 72 P.3d at 856 (quoting Idaho Code § 5-311(2)(b)). Because the allegations in the Complaint failed to show Ms. Robinson was financially dependent, the Court dismissed Count Four, but granted her leave to amend the Complaint to cure the deficiency. (Dkt. 27.)

Plaintiffs contend they have cured the defect by adding the following language to their Second Amended Complaint: "Plaintiff, as a single mother without child support, was

---

[4] In its March 31, 2017 Memorandum Decision and Order the Court already determined that Plaintiffs could not qualify as "heirs" under § 5-311(2)(a). *See* Dkt. 27, section 3A.

partly dependent on JAMES LEE DIMAGGIO for financial support and child care services and thus has standing to bring this action pursuant to Idaho Code § 5-5-311 [sic]." (Dkt. 28, ¶ 7.) Defendants argue this additional sentence is nothing more than an unsupported conclusory statement and Plaintiffs have failed to provide sufficient evidence within the four corners of their Second Amended Complaint to support a finding of Ms. Robinson's financial dependence for purposes of establishing standing. (Dkt. 31.) Plaintiffs assert that further facts are provided in Ms. Robinson's affidavit and support a finding of financial dependence sufficient for standing. (Dkt. 32.) Defendants oppose the Court's consideration of Ms. Robinson's affidavit as part of the Motion to Dismiss. (Dkt. 35.) And if the Court finds the Second Amended Complaint cured the defect and rules on Defendants' Motion as one of summary judgment Defendants still reject Ms. Robinson's affidavit as a series of self-serving statements without any evidentiary support, such as bank statements, records, or the like. (Dkt. 35.)

The Court finds the additional sentence in Plaintiffs' Second Amended Complaint is insufficient to cure the defective pleading for purposes of establishing standing to bring the wrongful death claim.

The Second Amended Complaint does not contain facts to support this allegation. Plaintiffs allege facts to support this allegation in their opposition and Ms. Robinson's affidavit; however, these facts needed to be alleged in the complaint to survive a motion to dismiss. *See E.S. ex rel. Gonzalez v. City of Visalia*, 2014 WL 824254, at *3 (E.D. Cal. Mar. 3, 2014). "In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in

MEMORANDUM DECISION AND ORDER - 9

opposition to a defendant's motion to dismiss." *Schneider v. California Dept. of Corrections*, 151 F.3d 1194, 1197 n. 1 (9th Cir. 1998) (citing *Harrell v. United States*, 13 F.3d 232, 236 (7th Cir. 1993)).

Even if the Court were to consider Ms. Robinson's affidavit, the factual assertions still fail to show she was financially dependent on Mr. DiMaggio. Ms. Robinson's affidavit provides that Mr. DiMaggio sent her $100 a month until his death; purchased furniture; paid for moving expenses, initial rental deposits, car repairs, schools supplies, and extracurricular activities for her children; and helped her in emergencies. She also testified that Mr. DiMaggio provided childcare services by watching her children two weeks each year, one week in the winter and one week in the summer.

A wrongful death plaintiff can satisfy the standing requirement for financial dependency by showing a loss of certain services; however, Idaho has defined "services" as meaning "tasks, usually of a household nature, regularly performed by the decedent that will be a necessary expense to the heirs of the decedent." Idaho Code § 5-311(2)(b)(2). While most certainly helpful to Ms. Robinson, Mr. DiMaggio's watching her children two weeks out of the year does not qualify as a "regularly performed" task.

A dependent is "[s]omeone who relies on another for support; one not able to exist or sustain oneself without the power or aid of someone else." *Dependent,* Black's Law Dictionary (10th ed. 2014). "To demonstrate financial dependence, a [party] 'must show that they were actually dependent, to some extent, upon the decedent for the necessaries of life.'" *Foster v. City of Fresno*, 392 F.Supp.2d 1140, 1146 (E.D. Cal. 2005). Necessaries of life have been defined to include shelter, clothing, food, and medical treatment. *See*

MEMORANDUM DECISION AND ORDER - 10

*Chavez v. Carpenter*, 111 Cal. Rptr.2d 534, 544 (Cal. Ct. App. 2001); *see also Hazelwood v. Hazelwood*, 129 Cal. Rptr. 384, 387 (Cal. Ct. App. 1976). Not discounting Ms. Robinson's loss of emotional support with her brother's death, this Court does not find that obtaining financial assistance from Mr. DiMaggio to make purchases not considered "necessaries of life" and $100 a month meets the level of financial dependence required to establish standing. *See Frary v. County of Marin*, 81 F.Supp.3d 811, 843 (N.D. Cal. 2015) (holding that "[d]ependence refers to financial rather than emotional dependency. . . ." (internal quotations and citations omitted.)) Additionally, if the Court were to consider Ms. Robinson's affidavit it would also consider the additional documents submitted with Defendants' Motion and those documents show Mr. DiMaggio's default on his mortgage, indebtedness to numerous financial institutions, his lack of assets beyond this law suit, and the $1,000,000.00 bond set by the Superior Court of California. (Dkt. 31-5, 31-6, 31-7, 31-8.) Even if Mr. DiMaggio was somehow providing Ms. Robinson with financial assistance prior to his death, it is not likely that assistance would have continued had he survived.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that the Motion to Dismiss (Dkt. 31) is **GRANTED**. Count Four is Dismissed with Prejudice.

Dated: **August 09, 2017**

Honorable Edward J. Lodge
United States District Judge